UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| RENEE DEAL, | ) | CASE NO.: 1:24-cv-976 |
| | ) | |
| Plaintiff, | ) | JUDGE BRIDGET MEEHAN BRENNAN |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| FRANK G. JACKSON, *et al.*, | ) | **AND ORDER** |
| | ) | |
| Defendants. | ) | |

Before the Court is *pro se* Plaintiff Renee Deal's ("Plaintiff") Complaint. (Doc. No. 1, PageID #1.)[1] For the reasons explained below, the Complaint is DISMISSED.

I. **Factual Allegations**

Plaintiff's Complaint names as defendants former Cleveland Mayor Frank Jackson ("Jackson"), Plaintiff's uncle Richard White ("White"), and the "U.S. Surveillance Program." In general, while Plaintiff's allegations span decades and a host of alleged activity, the thrust of Plaintiff's allegations are that she has been stalked by Jackson and White.

Plaintiff alleges that in the early 1990s, Jackson "laid in wait, at the bus stop" as she was on her way to work in the morning. (*Id.*) She contends he stated to her, "Ohhhhh, you made it huh?" (*Id.*) She states that she made eye contact with him, and he screamed and ran away from her. (*Id.* at 2.) She indicates that her brother knows Jackson, and Jackson told him that Plaintiff's eyes were "glowing like fire." (*Id.*) She contends that when she moved in early 1999,

---

[1] For ease and consistency, record citations are to the electronically stamped CM/ECF document and PageID# rather than any internal pagination.

Jackson arranged for men who had the ability to see inside her home to sit in front of her house. (*Id.*)

Plaintiff alleges that White placed wiretaps and "invasions" on her home in January 2002. (*Id.*) She indicates that in 2000 and 2001, she was employed as a secretary for Kappa House, a high-rise apartment building offering affordable senior citizen housing. (*Id.*) In 2001, she filed charges of sexual harassment against her boss with the Equal Employment Opportunities Commission ("EEOC") and the Ohio Civil Rights Commission ("OCRC"). (*Id.* at 3–4.) She claims that the "Kappa Brothers Organization" protected her boss during a mediation. (*Id.*) She then equates the Kappa House with the Kappa Alpha Psi fraternity, and claims that her uncle Richard White is "obviously a member of the organization." (*Id.* at 3.) She alleges that after she filed a sexual harassment lawsuit against her boss, White "placed invasions upon my home." (*Id.* at 4.)

Plaintiff indicates that at some point in 2002, she was watching television in her living room when her scheduled programing was going into a commercial break. (*Id.*) She states she saw "a black man leaning against a table or desk with his arms folded and staring at [her]." (*Id.*) She states the man then leaped up, startled, and ran out of view. (*Id.*) She states that "although I had not seen him in decades, I immediately recognized him as [U]ncle Ricky." (*Id.*) On another occasion, she saw Jackson watching her through her television. (*Id.* at 11.)

Plaintiff claims that she was speaking with a female relative over the telephone when the Holy Spirit spoke through her. (*Id.* at 4.) She contends that "[g]overnments, at all levels, as well as religious leaders, Jackson, White and others can bear witness to this fact because they all heard it." (*Id.*) She is sure that thousands of people taped it. (*Id.*)

Plaintiff states that she sought counseling from a psychologist at Cleveland Metro Health Hospital. (*Id.* at 5.) She states that her psychologist indicated that "they" wanted her to try medication. (*Id.*) She refused the medication believing she had foiled a plot by her uncle to poison her. (*Id.*) She states that her uncle worked within the pharmaceutical industry. (*Id.*)

Plaintiff alleges that in 2004, the singer R. Kelly sent her a message through his song titled "the Party Song." (*Id.* at 5–6.) Specifically, the song lyrics read, "Chilling at the house on the hill, you've got to say my, my, my like Johnny Gill." (*Id.* at 6.) The song then talks about a roof on fire. (*Id.*) Plaintiff claims that her house at that time appeared to sit on an upward slope. (*Id.*) That same house burned down in April 2004 because of arson. (*Id.*) She alleges that Jackson and White worked together to keep the "invasions and solicitations." (*Id.*)

Plaintiff claims one morning she was "minding a private moment" when "air raid" sirens sounded. (*Id.*) She believes that was done to humiliate her. (*Id.*)

Plaintiff claims a former male coworker visited her at her home and remained for a few hours. (*Id.* at 7.) She learned several months later that he had died. (*Id.*) She has no idea what caused his "demise," but she suspects he was poisoned by Jackson and/or White to punish him for visiting her. (*Id.* at 7–8.)

Plaintiff claims that her granddaughter was born with a "breathing defect" in January 2012. (*Id.* at 8.) Due to her delicate condition, she could not come home and was being cared for by the Berea Aristocrat Home for disabled children. (*Id.*) Plaintiff claims she regularly saw lights flicker when she visited her granddaughter. (*Id.* at 9.) Her granddaughter died when her breathing apparatus became dislodged. (*Id.*) She contends Jackson ordered someone to break into the hospital and murder the child. (*Id.*)

Plaintiff alleges that White made a comment to his boss at White's mother's funeral in 2017. (*Id.* at 12.) Plaintiff heard the words, "that's the one who . . ." and then heard his boss say, "you better watch her" to which White replied "I am." (*Id.*) She indicates that she wrote to White in the days following the funeral accusing him of invading her privacy. (*Id.*) She received a "cease and desist" letter from his attorney. (*Id.*)

Plaintiff indicates that she filed a police report with Detective Mackey accusing Jackson of stalking her through her television and electrical outlets. (*Id.* at 11, 14.) She attempted to obtain a restraining order against Jackson, but Detective Mackey and Jackson's attorney called her testimony delusional. (*Id.* at 14.) She claims the court denied her request. (*Id.*)

Finally, Plaintiff contends that she is not certain "at what point the U.S. Surveillance Program took over the invasions and solicitations against [her]." (*Id.* at 15.) She claims that the "affordable internet program" was "backed by the U.S. Surveillance, whereby millions of citizens were given the right to also invade [her] privacy, nonstop, around the clock for several years until the program had run its course effective April 30, 2024." (*Id.*)

II. <u>Analysis</u>

    A.    **Legal Standard**

Courts liberally construe a *pro se* Plaintiff's pleadings and filings. *Boswell v. Mayer*, 169 F.3d 384, 387 (6th Cir. 1999). This means that *pro se* Complaints are "held to less stringent standards than those prepared by attorneys." *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004) (citations omitted). Liberal construction, however, does not "abrogate basic pleading essentials." *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989). In reviewing a complaint, the

Court must construe the pleading in the light most favorable to the Plaintiff. *Bibbo v. Dean Witter Reynolds, Inc.*, 151 F.3d 559, 561 (6th Cir. 1998).

A court may dismiss a complaint *sua sponte* for lack of jurisdiction if it appears that the allegations are "totally implausible, attenuated, unsubstantial, frivolous, devoid of merit, or no longer open to discussion." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999) (per curiam). "A complaint 'is frivolous when it lacks an arguable basis either in fact or in law.'" *Abner v. SBC (Ameritech)*, 86 F. App'x 958 (6th Cir. 2004) (quoting *Neitzke v. Williams*, 490 U.S. 319, 325, 327–28 (1989)). A complaint "lacks an arguable or rational basis in fact if it describes fantastic or delusional scenarios." *Id.* Dismissal for lack of subject matter jurisdiction under rule 12(b)(1) should be exercised with caution and used "only the rarest of circumstances where . . . the complaint is deemed totally implausible." *Id.* When a complaint is "totally implausible" in this way, federal jurisdiction is divested. *Apple*, 183 F.3d at 479.

### B. Subject Matter Jurisdiction

The Court lacks subject matter jurisdiction because Plaintiff's allegations describe events that are totally implausible and frivolous. *Id.* at 479. While Plaintiff may sincerely believe these events occurred exactly the way she described them, the Court cannot accept as true allegations that are totally implausible and frivolous. The Sixth Circuit has instructed district courts that "most complaints will not be so clearly insufficient as to warrant dismissal under Rule 12(b)(1), but instead should be handled under Rule 12(b)(6) of the Federal Rules of Civil Procedure if the complaint fails to state a claim upon which relief can be granted." *Id.* at 480. But where, as here, a "district court is faced with a complaint that appears to be frivolous or unsubstantial in nature, dismissal under Rule 12(b)(1) as opposed to Rule 12(b)(6)) is appropriate." *Id.*

Other courts have dismissed cases when presented with similar factual allegations. *See e.g.*, *Tucker v. FBI Head Quarters*, 19-cv-13626, 2020 WL 4006760, at * (E.D. Mich. Feb. 26, 2020) ("The crux of the complaint, that the 'Surveillance Operatives' are illegally using electronic warfare and neural weapons against him and his family, as well as other plots and conspiracies involving the 'deep state,' lacks an arguable basis in rational fact"); *Knight v. Foxworth*, No. 07-cv-70, 2007 WL 2427769, at *4 (E.D. Tex. Aug. 22, 2007) ("In this case, it is apparent that Knight's claims of monitoring by unseen enemies via computer, through the plumbing and air vent in his cell, are irrational and wholly incredible."); *Lawrence v. Priest*, No. 23-cv-365, 2023 WL 3871922, at * (W.D. Mich. Apr. 17, 2023) (dismissing complaint for lack of subject matter jurisdiction because allegations were "totally implausible"). As such, the Court finds that allegations in the pleading are not sufficient to establish a basis for federal jurisdiction.[2]

### III. Conclusion

This action is DISMISSED for lack of subject matter jurisdiction. The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.

**IT IS SO ORDERED.**

Date: August 27, 2024

_____
BRIDGET MEEHAN BRENNAN
UNITED STATES DISTRICT JUDGE

---

[2] Defendant Jackson filed a motion to dismiss pursuant to Rule 12(b)(6) arguing that the allegations are implausible, the claims are barred by the statute of limitations, and that Jackson is entitled to qualified immunity. (Doc. 7-1.) The Court does not reach these arguments because the Court dismisses the complaint *sua sponte* under Rule 12(b)(1).